840 So.2d 357 (2003)
THE CLARK CONSTRUCTION GROUP, INC., Appellant,
v.
WENTWORTH PLASTERING OF BOCA RATON, INC., Employers Insurance of Wausau, Performing Arts Center Authority d/b/a Broward Center for the Performing Arts, and Benjamin Thompson & Associates, P.A., Appellees.
No. 4D02-2442.
District Court of Appeal of Florida, Fourth District.
March 5, 2003.
Rehearing Denied April 9, 2003.
Michael Evan Jaffe of Thelen Reid & Priest LLP, Washington, D.C., and William C. Davell of May, Meacham & Davell, P.A., Fort Lauderdale, for appellant.
Bruce Charles King and Nicole R. Rekant of Carlton Fields, P.A., Miami, for appellee Employers Insurance of Wausau.
STEVENSON, J.
The sole issue in this appeal is the propriety of the trial court's entry of final summary judgment in favor of appellee, Employers Insurance of Wausau, on statute of limitations grounds. We affirm.
This appeal has its genesis in the design and construction of the Broward Center for the Performing Arts. In June of 1986, the Performing Arts Center Authority ("PACA") contracted with Benjamin Thompson and Associates, P.A. ("Thompson") for the engineering, architectural and design services required for the project. In April of 1988, PACA contracted with The Clark Construction Group, Inc., f/k/a The George Hyman Construction Company ("Clark"), for the actual construction of the center. The project was completed and accepted in 1991.
In May of 1999, PACA filed suit against both Thompson and Clark, alleging that their respective negligence had resulted in the failure of the center's stucco wall system and water damage. Clark, in turn, filed a third-party complaint against subcontractor Wentworth Plastering of Boca Raton, Inc. ("Wentworth") and Employers Insurance of Wausau ("Wausau"). Wentworth had performed all of the plaster, gypsum, and stucco work; Wausau issued a performance bond in favor of Clark with respect to the subcontract. In count I of the third-party complaint, Clark alleged that subsection six of its contract with Wentworth obligated Wentworth to indemnify, defend, and hold Clark harmless for *358 all costs incurred by Clark as the result of Wentworth's failure to perform the subcontract. In count III, Clark alleged that because of its issuance of the performance bond, Wausau was obligated to indemnify and hold Clark harmless for any loss, damage, or expense incurred as a consequence of Wentworth's refusal to indemnify Clark as required by the subcontract.
Wausau filed a motion for summary judgment with respect to the third-party complaint, asserting that Clark's claim was barred by the five-year statute of limitations set forth in section 95.11(2)(b), Florida Statutes. Citing Federal Insurance Co. v. Southwest Florida Retirement Center, Inc., 707 So.2d 1119 (Fla.1998), Wausau argued that the five-year statute of limitations began to run in 1991, when the project was accepted. Clark took the position that its claim was really one for indemnity and that the statute of limitations did not begin to run until 1999, when it was sued by PACA and Wentworth refused to defend and indemnify Clark. The trial court sided with Wausau, finding that the issue was governed by the supreme court's decision in Federal Insurance.
The parties to this appeal agree that the relevant statute of limitations is found in section 95.11(2)(b), Florida Statutes,[1] which provides for a five-year statute of limitations for actions on a contract or written instrument. In Federal Insurance, our supreme court addressed section 95.11(2)(b) and its application to performance bonds. In that case, Southwest Florida Retirement Center, Inc. ("Southwest") contracted with McMerit Construction Company ("general contractor") for the construction of a retirement center. See 707 So.2d at 1119. Federal Insurance Company ("Federal") issued a performance bond in favor of Southwest and Barnett Bank. The bond included language which incorporated by reference the terms of the construction contract, guaranteeing "faithful performance of the construction contract according to its terms and conditions." Id. at 1120. Ten years after completion of construction of the project, latent defects were discovered. Southwest sued both the general contractor and Federal. With respect to Federal, Southwest alleged a breach of the performance bond for its failure to cure the general contractor's warranty violation. The trial court found that the claim was barred by the five-year statute of limitations set forth in section 95.11(2)(b). The Second District reversed, and the case was presented to the supreme court.
The supreme court agreed that the language of the bond was sufficiently broad to make Federal liable for defective work performed by the general contractor upon the general contractor's default. Nonetheless, the court found that there was no such liability in the case because the claim was time-barred.
[W]e do not agree with the district court's majority that the five-year period would begin to accrue at a time other than acceptance of the construction. On this issue we agree with Judge Blue's dissent and quash the majority's decision. *359 We expressly hold that section 95.11(2)(b), Florida Statutes (1981), as it applies to an action on a performance bond, accrues on the date of acceptance of the project as having been completed according to terms and conditions set out in the construction contract.
707 So.2d at 1121 (emphasis added). The supreme court specifically rejected Southwest's attempt to avoid the statute of limitations by arguing that the contractor was not required to cure the default until 1994 and, thus, that the limitations period could not have begun to run until that time. See id. at 1121 n. 5 ("Regardless of the `spin' put upon it, the statute of limitations for Federal's obligation in respect to latent defects accrues from the acceptance of the construction project.").
Clark seeks to avoid the supreme court's holding by arguing that the bond at issue in this case is substantively different from the one in Federal Insurance. Clark contends that the language of the subcontract[2] and the bond[3] "not only covers the subcontractor's bricks and mortar performance, but also imposes specific indemnification and hold harmless obligations on Wausau." According to Clark, since it is Wausau's indemnity obligations that are at issue, Federal Insurance simply has no application. We cannot agree. Even if we accept Clark's contention that, here, the language of the bond and the subcontract impose separate and distinct indemnity obligations, this does not alter the fact that Clark's claim against Wausau is still one for breach of a performance bond. Insofar as the running of the statute of limitations is concerned, we see little material distinction between the warranty obligation arising out of the performance bond in Federal *360 Insurance and the "indemnity" obligation involved here. Consequently, like the trial court, we find that the case is governed by Federal Insurance and, thus, affirm.
AFFIRMED.
FARMER and HAZOURI, JJ., concur.
NOTES
[1] Subsequent to the June 1999 filing of Clark's third-party complaint against Wentworth and Wausau, section 95.11(2)(b) was amended and now provides:

Actions other than for recovery of real property shall be commenced as follows:
* * *
(2) WITHIN FIVE YEARS.
* * *
(b) A legal or equitable action on a contract, obligation, or liability founded on a written instrument, except for an action to enforce a claim against a payment bond, which shall be governed by the applicable provisions of ss. 255.05(2)(a)2. and 713.23(1)(e).
§ 95.11(2)(b), Fla. Stat. (2002); see also Ch.2001-211, §§ 2 & 13, at 1880, 1888, Laws of Fla.
[2] The subcontract between Wentworth and Clark provides in relevant part:

6. Subcontractor's Liability
* * *
b. Subcontractor shall be liable to [Clark] for all costs [Clark] incurs as a result of Subcontractor's failure to perform this Subcontract in accordance with its terms.... Subcontractor's liability shall include, but not be limited to (1) damages and other delay costs payable by [Clark] to Owner;...; (3) warranty and rework costs; (4) liability to third-parties ....
Additionally, exhibit D to the subcontract includes the following paragraph:
"Indemnity:
Subcontractor does hereby indemnify and save the contractor, owner and architect/engineer harmless of and from any loss, damage, cost and expense which the contractor, owner and/or architect/engineer may suffer or sustain or be threatened with liability, for, arising either under any workers' compensation law or otherwise, out of the performance of this subcontract by subcontractor, his agents, employees, materialmen or sub-subcontractors ..."
[3] The bond includes the following language:

WHEREAS, the Principal has entered into a written Subcontract with the Obligee, dated September 23, 1988, to perform, as Subcontractor, certain portions of the work in connection with said Prime Contract, consisting of gypsum plaster, veneer plaster, stucco and molded reinforced gypsum which Subcontract is hereby referred to and made a part hereof.
NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the above bounden Principal shall well and truly perform all the undertakings, covenants, terms, conditions, and agreements of said Subcontract within the time provided therein and any extensions thereof that may be granted by the Obligee, and during the life of any guaranty required under said Subcontract, and shall also well and truly perform all the undertakings, covenants, terms conditions, and agreements of any and all duly authorized modifications of said Subcontract that may hereafter be made, and shall indemnify and save harmless said Obligee of and from any and all loss, damage, and expense, including costs and attorney's fees, which the said Obligee may sustain by reason of failure so to do, then this obligation shall be null and void; otherwise it shall remain in full force and effect.